CRAIG H. MISSAKIAN (CABN 125202)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONAH P. ROSS (CABN 305076)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, CA 94612
Telephone: (510) 637-3680
Fax: (510) 637-3724
E-Mail: jonah.ross@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LAMAR WEBSTER,<br><br>Defendant. | **CASE NO. 4:25-CR-00274 YGR**<br><br>**GOVERNMENT'S DETENTION MEMORANDUM** |

## I. INTRODUCTION

In the instant case, defendant Lamar Webster—a known member of Oakland's Case gang—pointed a loaded fully automatic Glock pistol at a victim and threatened to kill her after stomping on and shattering her car's windshield. Two months later, he was arrested with a loaded Glock matching that precise description. Jail calls indicate that Webster, who has been detained at Santa Rita Jail since his arrest, has attempted to bribe his accuser to persuade her to recant her statements and threatened violence against her relative if she refuses.

Webster has a history of gun violence. In 2013, he shot and killed a rival gang member and was sentenced to 10 years in prison for voluntary manslaughter. And further, Webster's social media activity indicates that he remains affiliated with Case gang, has access to firearms, and often threatens others with violence.

Webster is a danger to the community, and it is imperative that he remain detained pending trial.

## II. BACKGROUND

### a. Webster Has Been Indicted for Possession of a Firearm as a Felon and Possession of a Machinegun

On September 4, 2025, the grand jury returned an indictment charging Webster with one count of felon in possession of a firearm and one count of possession of a machinegun.

#### 1. In February, Webster Pointed a Loaded Machinegun at a Woman and Threatened to Kill her After Stomping on her Windshield

According to the victim's sworn testimony and earlier statement to officers with the Oakland Police Department (OPD), on February 7, 2025, Webster and a woman got into an argument over a parking spot in Oakland. After Webster's white BMW sedan—which he had apparently left in neutral—rolled into the woman's car, Webster became upset, and jumped onto the hood of the woman's car and began to stomp on the windshield, causing the damage seen below:



After damaging the windshield, Webster pulled out a pistol, racked the slide (indicating a round had been loaded into the chamber and the pistol was ready to be fired), pointed it at the woman, and threatened to kill her, saying, "B----, I'll shoot you." In fear for her life, the woman fled and called the police. When police arrived, the woman described the pistol Webster possessed as a black Glock with a "stick" and a "switch" (slang for an extended magazine and a machine gun conversion device, also known as an autosear, respectively). The woman told police (and later testified under oath) that she was familiar with Glocks and with conversion devices.

For this conduct, Webster was charged in Alameda County with criminal threats, brandishing a weapon, vandalism, and felon in possession of a firearm.

**2. April 3, 2025: Webster Arrested with a Glock Pistol with an Extended Magazine and a Machine Gun Conversion Device**

Following the February 7 incident, an Alameda County judge issued an arrest warrant for Lamar Webster. On April 3, 2025, officers observed Webster driving his white BMW sedan. (The vehicle was registered to him.) Officers tracked Webster to a parking lot, where they found the BMW parked with Webster in the driver's seat. A man was standing outside the driver's side door, which was open, and another man was in the front passenger seat. When officers ordered Webster to put his hands up, they saw him reach toward the vehicle's rear seat. The officers then detained all three men. (The man outside the car possessed a revolver and narcotics on his person.)

Officers then searched Webster's BMW. On the floorboard where Webster had been seated,

officers located approximately $21,000 in cash. On the rear seat of the car (where Webster had reached), officers found a green duffel bag. Inside the bag was a black Glock pistol with a 22-round high-capacity magazine loaded into the magazine well. The pistol—which was loaded with a round in the chamber—was modified with an aftermarket autosear device, converting the semi-automatic pistol to a fully-automatic machinegun. (The OPD criminalistics lab confirmed the firearms functioned as a machinegun, meaning it expelled multiple rounds with a single pull of the trigger.) These conversion devices allow a pistol to fire approximately 20 rounds per second with a single pull of the trigger.[1] The Glock's conversion device is shown below:



In the same duffel bag, officers located a wallet containing Webster's driver's license, a loaded 12-round firearm magazine, clear sandwich bags with twisted knots containing suspected marijuana, a small container with several individually tied bags containing suspected cocaine, a small scale, and a box of Glad sandwich bags.

On the floorboard of the front passenger seat (where another man had been seated), officers

[1] For a demonstration of how machine gun conversion devices work, see https://www.youtube.com/watch?v=2KcnEn_e154.

located another loaded pistol.

**b. In 2013, Webster Was Sentenced To 10 Years In Prison After Shooting And Killing A Rival Gang Member**

In 2013, Webster—a known member of Oakland's Case gang—shot and killed a leader of the rival Ghost Town gang, who was seated in a vehicle. The OPD report indicates the victim died after suffering three gunshot wounds to his back. Webster was arrested two days after the incident and charged with murder. He eventually pleaded guilty to voluntary manslaughter and received a 10-year prison sentence.

**c. Webster's Social Media Activity Shows His Possession and Use of Firearms, Threats of Violence, and His Continued Affiliation with the Case Gang**

Webster's recent Instagram activity continues to show possession and use of firearms, threats to commit violence act, and his continued affiliation with Case gang.

On January 24, 2025, Webster sent through Instagram photographs and videos of himself apparently at a gun range in Las Vegas, where—despite being a felon—he fired multiple fully automatic machine guns, including a modified Glock similar to the one he possessed in the instant case. (In a voice message, Webster explained to another person that the gun was a Glock 18 pistol.) Webster also fired a fully-automatic AK-style rifle:





Webster's Instagram account also features numerus images and videos containing firearms, including the following. (We have not yet determined whether he sent or received the content.):













Further, through his Instagram account, Webster has made violent threats to other people, often in the context of arguments. For example, on August 8, 2024, Webster sent an audio message stating

twice that he was not concerned about another man because Webster "fight[s] and shoot[s]." And on January 5, 2024, during an argument with another user, Webster indicated he was outside the other user's residence, waiting for him to come outside.

As noted, Webster, who was then a known Case gang member, shot and killed a gang rival in 2013. Webster's Instagram activity makes clear that his affiliation with Case gang continues now. Webster has repeatedly sent and received messages regarding the Case gang and announced his dismay that younger members of the gang "clique up" with others.

**d. Webster's Jail Calls Indicate He Has Attempted to Bribe His Accuser to Persuade Her to Recant Her Statements**

Since his arrest on April 3, 2025, Webster has been detained at Santa Rita Jail. On at least one jail call during that time, Webster discussed with family members a plan to pay thousands of dollars to the victim from the February 7, 2025 incident to persuade her to sign an affidavit recanting her statement to police. At the time, the victim's relative was incarcerated in the same pod with Webster at Santa Rita Jail, and Webster can be heard on a call appearing to threaten to harm the relative if the affidavit is not received. At the time, the relative was on a phone call with the victim of the February 7 incident. Webster also indicated on the call that people would "get stomped" if he did not get his way. Nonetheless, on June 24, 2025, the victim testified in Alameda County that Webster had threatened to kill her while pointing a Glock pistol modified with an extended magazine and an autosear device.

## III. LEGAL STANDARD

Under the Bail Reform Act of 1984, as amended, the Court must detain a defendant pretrial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated

in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## IV. WEBSTER'S CONTINUED CRIMINAL CONDUCT AND HIS VIOLENT HISTORY PROVE THAT HE IS A DANGER TO THE COMMUNITY

The United States submits that no condition or combination of conditions will protect the public should he be released from custody.

### a. The Nature And Circumstances Of The Offense And The Danger Webster Poses To Both The Community And To His Accuser Weigh In Favor Of Detention

In the instant case, Webster pointed a loaded machine gun with a round in the chamber and an extended magazine at the victim and threatened to kill her after stomping on her windshield. Approximately two months later, he was found in possession of a gun matching that description—which was loaded with over 20 rounds of ammunition—as well as narcotics and over $21,000 in cash. Webster, who has been incarcerated since his arrest, has apparently nonetheless attempted to pay off his victim to persuade her to recant her statements.

Webster is a danger to the community in general and specifically to his accuser in this case. Even since his arrest, he has made clear his willingness to use violence to silence his accuser and to avoid consequences for his conduct. His release could have catastrophic consequences.

### b. The Weight of the Evidence Against Webster Is Overwhelming

The evidence against Webster is overwhelming. After the victim of the February 7 incident provided a precise description of the firearm Webster possessed, Webster was found in possession of a pistol matching that precise description. Webster had been observed reaching to the area where the

pistol was recovered, and it was located in a bag containing his wallet and identification, all of which was inside a vehicle registered to him and that he was known to drive.

### c. Webster's Criminal History and Prior Conduct Demonstrate the Danger He Poses

Webster's criminal history and prior conduct demonstrate the danger he poses to the community. Webster—a man who continues to have gang ties and access to firearms—has previously shot and killed another man who was a gang rival. Given that history, his threat to shoot the victim in the instant case is particularly alarming.

## V. <u>CONCLUSION</u>

For the reasons set forth above, Webster is a danger to the community and a flight risk. The Court should therefore detain Webster pending trial.

DATED: October 2, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
Acting United States Attorney

*<u>/s/ Jonah P. Ross</u>*
JONAH P. ROSS
Assistant United States Attorney