CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JONAH P. ROSS (CABN 305076)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
jonah.ross@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LAMAR WEBSTER,<br>Defendant. | CASE NO. 4:25-cr-00274 YGR<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date: September 24, 2026<br>Time: 9:30 a.m. |

**INTRODUCTION**

Defendant Lamar Webster, a known gang member with a violent criminal history, possessed a loaded pistol equipped with a high-capacity magazine and an aftermarket auto sear device, converting the pistol to a fully-automatic machinegun. Webster has pleaded guilty in the instant case to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

For the reasons set forth below, the government requests that the Court sentence Webster to 37 months imprisonment, which represents the middle of the guidelines range as agreed by the parties, and a three-year term of supervised release.

/ / /

/ / /

## BACKGROUND

### A. Offense Conduct

1. <u>On April 3, 2025, Webster Possessed a Loaded Glock Pistol with a High-Capacity Magazine and Modified to Fire as a Fully-Automatic Machinegun</u>

On April 3, 2025, officers with the Oakland Police Department (OPD) were patrolling East Oakland, searching for Webster, who was the subject of an active arrest warrant related to allegations from February 7, 2025. *See* Presentence Investigation Report (PSR) ¶ 7. Officers located Webster's vehicle parked in the rear of a business on International Boulevard. *Id.* Webster was observed as the driver, sitting with the door of the vehicle open. *Id.*

Officers approached and announced themselves as police. PSR ¶ 8. As they did so, they noticed another male subject, G.B., next to the open front door, and a male subject, A.B., seated in the front passenger seat. *Id.* Officers ordered Webster, A.B., and G.B., to show their hands. *Id.* Webster eventually complied with the officers and was detained without incident. *Id.* G.B. ignored commands to walk toward the officers, and officers physically restrained him to put him in handcuffs. *Id.* A.B. was taken into custody without incident.

A search of Webster's vehicle revealed a green duffel bag in the rear middle seat area, and within reach of the driver's seat. PSR ¶ 9. The bag contained a loaded Glock 23 .40 caliber handgun (serial number ERC741) with an auto sear attached to the slide, which modified the pistol to fire as a fully-automatic machinegun. *Id.* The pistol was equipped with a 22-round extended magazine loaded with live ammunition. *Id.* Under the handgun was a black plastic bag which contained a black scale, a sandwich bag filled with additional bags, four clear sandwich bags containing individually bagged suspected marijuana, and a container with individually knotted bags containing suspected cocaine. *Id.* In a separately zipped pocket of the green bag was an additional 12-round magazine loaded with ammunition. *Id.* Another zipped pocket had a wallet containing Webster's identification. *Id.* Officers found a black plastic bag that contained a clear, large gallon bag containing suspected marijuana, and approximately 14 pills in different colors. *Id* ¶ 10. Under the front passenger seat, where A.B. had been sitting, officers located a KBI Harrisburg .380 caliber handgun. *Id.*

2. <u>On February 7, 2025, Webster Allegedly Threatened a Woman with a Glock Firearm and Stomped on her Windshield</u>

On February 7, 2025, a woman, reported to OPD officers that a man, later identified as Webster, had threatened her with a black handgun with an extended magazine and machinegun conversion device after an argument over a parking spot. PSR ¶ 35. The woman alleged that in the course of the argument, Webster had climbed on her vehicle and stomped on and damaged the windshield. *Id.* OPD officers secured a warrant for Webster's arrest, which led to the March 6, 2025 arrest described above.

As the government explained to the court during the detention hearing held on October 9, 2025, however, investigators' review of jail calls revealed an apparent subsequent effort by the woman to demand money from Webster in exchange for recanting her allegations in advance of a hearing in Webster's then-pending state criminal case. Appearing to speak in coded language about the proposal, Webster's jail calls suggested he was considering the payment, although there was no indication any money was paid. The woman eventually testified against Webster, and that case was dismissed after Webster's indictment in the instant case.

**B. Procedural History**

On September 4, 2025, a two-count Indictment was filed in the Northern District of California, charging the defendant with violations of 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm, and 18 U.S.C. § 922(o) – Possession of a Machinegun. PSR ¶ 1. On June 25, 2026, Webster pleaded guilty to Count One of the Indictment. *Id.* at ¶ 2.

Following his indictment, Webster made his initial appearance on September 22, 2025, and on October 9, 2025, he was ordered detained, where he has remained. PSR ¶ 4.

**C. Criminal History**

Defendant has suffered the following convictions as an adult:

- 2009: Cal. Penal Code § 374.7(a) (litter/dump waste in water/shore), misdemeanor;
- 2011: Cal. Penal Code § 12025(a)(1) (carry concealed weapon in a vehicle), misdemeanor; and
- 2013: Cal. Penal Code § 192(a) (voluntary manslaughter with firearm), felony.

## ARGUMENT

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include (among other factors):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. Sentencing Guidelines Calculation

As set forth in the Plea Agreement, the parties' Sentencing Guidelines calculation for Webster's offense level is as follows:

| | U.S.S.G. Section | Level/Points |
|---|---|---|
| Base offense level | § 2K2.1(a)(3) – semiautomatic firearm capable of accepting large capacity magazine and prior crime of violence | 22 |
| Acceptance of responsibility | §3E1.1(a) and (b) | -3 |
| Total offense level | | 19 |

The Probation Officer concluded that Webster's criminal history score is 3, and Webster therefore falls into Criminal History Category II. PSR ¶¶ 31-32. The parties therefore calculate

Webster's Guidelines range as 33 to 41 months in prison, and the parties' recommended sentence represents the middle of that range.

The PSR has included an additional four-level enhancement for possessing the firearm in connection with a felony offense (possessing narcotics for sale), which would bring the Base Offense Level to 26 and the Total Offense Level to 23, leading to a Guidelines range of 51 to 63 months. PSR ¶¶ 3, 65.

Consistent with the Plea Agreement, the government has objected to the inclusion of the four-level enhancement and requests that the Court not include it in its own calculation. Although Webster appeared to possess narcotics packaged for sale while he possessed the firearm at issue in this case, it is unclear that he was actively engaged in selling narcotics at the time of his arrest, nor was the firearm on his person at the time of his arrest. Given the totality of the circumstances, the government asks that the Court not include this increase.

**D. The United States' Sentencing Recommendation**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 37 months—the middle of the guidelines range as calculated by the parties—to be followed by a three-year term of supervised release. Consistent with 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense and to provide specific deterrence given Webster's criminal history, but also to account for relevant mitigating factors.

Webster's conduct here is dangerous, and his crime is serious. Despite his violent history and his prior felony conviction, Webster possessed in his vehicle a loaded pistol equipped with a high-capacity magazine and modified to fire as a fully-automatic machinegun, capable of discharging all rounds with a single pull of the trigger. Further, a woman has alleged that Webster threatened her with a gun and damaged her vehicle in the months leading up to the charged offense. While her description of his gun matches the description of the pistol ultimately recovered in his vehicle roughly two months later, her account of the confrontation with Webster is called into question by apparent subsequent efforts to seek payment from him in exchange for recanting her version of the events.

The government also recognizes the mitigating factors addressed in the PSR. While he did not report experiencing trauma in his own home, Webster witnessed and was victim to violence from a young age, including being hit by multiple stray bullets, losing friends to gun violence, and observing dead bodies on the streets of Oakland. PSR ¶¶ 48-49. The government acknowledges that events and circumstances outside Webster's control increased the likelihood that he would engage in the criminal conduct at issue in this case. The government has accounted for this mitigation in arriving at its sentencing recommendation.

While the government sympathizes with the defendant for the trauma he has endured, and hopes that, after his prison sentence, he accomplishes his stated goal of living outside of Oakland with his wife and son, Webster appears to view his experiences with gun violence as a justification to carry a firearm. He is a danger to the public. Taking into account the factors to be considered under 18 U.S.C. § 3553, a sentence of 37 months—the middle of the guidelines range as calculated by the parties—is appropriate.

**CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence Webster to 37 months in prison followed by a three-year term of supervised release.

DATED: September 18, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
JONAH P. ROSS
Assistant United States Attorney